UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

In re:
FLOYD DUSTIN BOWIE, III
*fdba Premier Milwaukee*
*fdba Bowie Properties, LLC*
*fdba Delux Entertainment*
*dba Housing Matters, LLC*,
    Debtor.

Chapter 13
Case No. 17-28664-BEH

NOTICE OF MOTION BY CITIBANK, N.A. FOR RELIEF
FROM AUTOMATIC STAY, CO-DEBTOR STAY, AND ABANDONMENT
RE: PROPERTY LOCATED AT:
2119 Silver Spring Drive W, Milwaukee, Wisconsin 53209

    CitiBank, N.A. ("Movant")[1] has filed papers with the bankruptcy court to obtain relief
from the automatic stay, co-debtor stay, and abandonment with respect to real property at 2119
Silver Spring Drive W, Milwaukee, Wisconsin 53209 ("Property").

    <u>Your rights may be affected.</u> **You should read these papers carefully and discuss
them with your attorney, if you have one in this bankruptcy case. (If you do not have an
attorney, you may wish to consult one.)**

    If you do not want the court to grant relief from the automatic stay, co-debtor stay, and/or
abandonment, or if you want the court to consider your views on the motion, then within 21 days
of the filing date indicated on this notice, you or your attorney must file with the court a written
response explaining your position and requesting a hearing at:

        Clerk, U.S. Bankruptcy Court
        Eastern District of Wisconsin
        517 East Wisconsin Avenue

---

    [1]**Basis for asserting that the applicable party has the right to foreclosure.** CitiBank, N.A.
services the loan on the property referenced in this motion for relief. In the event that the automatic stay
in this case is lifted/set aside, this case dismissed, and/or the debtor obtains a discharge and a foreclosure
action is commenced on the mortgaged property, the foreclosure will be conducted in the name of
CitiBank, N.A. ("Noteholder"). Noteholder, directly or through an agent, has possession of the
promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed.
Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the
referenced loan.

Milwaukee, WI 53202

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the deadline stated above.

You must also mail a copy to:

> O'Dess and Associates, S.C.
> Attn: D. Alexander Martin
> 1414 Underwood Avenue, Suite 403
> Wauwatosa, WI 53213

> Rebecca R. Garcia
> Chapter 13 Trustee
> P.O. Box 3170
> Milwaukee, WI 54903-3170

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting the relief requested.

Dated at Wauwatosa, Wisconsin this 20 day of December, 20 17 .

> O'DESS AND ASSOCIATES, S.C.
> Attorneys for Movant

> By:   D. Alexander Martin
>       State Bar ID No. 1046591

> Case No. 17-28664-beh

**For informational purposes and to comply with applicable law only. This should not be construed as an attempt to collect a debt.**
**O'Dess and Associates, S.C., is attempting to collect a debt and any information obtained will be used for that purpose.**
**If you have previously received a Chapter 7 Discharge in Bankruptcy, this correspondence should not be construed as an attempt to collect a debt.**

Drafted by:

> O'Dess and Associates, S.C.
> 1414 Underwood Avenue, Suite 403
> Wauwatosa, WI 53213
> (414) 727-1591
> (414) 727-1590 fax

2

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

In re:                                          Chapter 13
FLOYD DUSTIN BOWIE, III                         Case No. 17-28664-BEH
*fdba Premier Milwaukee*
*fdba Bowie Properties, LLC*
*fdba Delux Entertainment*
*dba Housing Matters, LLC*,
        Debtor.

MOTION BY CITIBANK, N.A. FOR RELIEF FROM AUTOMATIC
STAY, CO-DEBTOR STAY, AND ABANDONMENT
RE: PROPERTY LOCATED AT:
2119 Silver Spring Drive W, Milwaukee, Wisconsin 53209

CitiBank, N.A. ("Movant"), through its attorneys, O'Dess and Associates, S.C., pursuant

to 11 U.S.C. §§362(d), 1301(c) and 554(b) of the Bankruptcy Code and Rules 4001(a) and

6007(b) of the Federal Rules of Bankruptcy Procedure, moves the bankruptcy court for relief

from the automatic stay, co-debtor stay, and abandonment, and in support states as follows:

1.      Debtor Floyd Dustin Bowie, III filed a voluntary petition under chapter 13 of the

Bankruptcy Code on August 31, 2017.

2.      Debtor executed and delivered a home equity line of credit agreement and

disclosure dated November 30, 2004, to Citibank, F.S.B. for an original principal sum of

$29,000.00 ("Note"). Movant, directly or through an agent, has possession of the Note and the

Drafted by:

O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax

3

Note is duly endorsed. A copy of the Note, Certification of Conversion, Power of Attorney and Certificate of Name Change is attached as Exhibit 2, and incorporated herein by reference.

3.     Payments pursuant to the Note are secured by a mortgage ("Mortgage") of even date and executed by debtor and co-debtors, Floyd E. Bowie and Mary J. Bowie, on real property located at 2119 Silver Spring Drive W, Milwaukee, Wisconsin 53209 ("Property"). A copy of the Mortgage is attached as Exhibit 1, and incorporated by reference.

4.     As of December 6, 2017, the total debt owed by the debtor to Movant, according to Movant's records, is $29,290.34, comprising unpaid principal balance of $24,436.68, together with accrued interest of $579.40, and fees, charges and expenses of $4,274.26.

5.     Debtor failed to comply with the terms and conditions of the Note and Mortgage and his proposed chapter 13 plan by failing to make the post-petition monthly mortgage payments which came due September 26, 2017, at $501.51, October 26, 2017, at $251.19, and November 26, 2017, at $246.83. A summary of the post-petition mortgage payment history since the post-petition mortgage payments were last current is attached as Exhibit 3.

6.     Upon information and belief, the Property is encumbered by a mortgage held by BMO Harris Bank, N.A. securing indebtedness of $78,839.00 according to debtor's schedules.

7.     Upon information and belief, the Property has an approximate market value of $89,300.00 based upon the debtor's schedules.

8.     Based upon the above, there is a lack of adequate protection as to the secured interest involved herein, the Property is burdensome and of inconsequential value to the

Drafted by:

O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax

4

bankruptcy estate, and due to debtor's failure to maintain post-petition mortgage payments cause exists to lift the automatic stay and make inapplicable the 14 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

9.      Movant seeks relief for the purposes of exercising its remedies against the Property as permitted by the Note and Mortgage and applicable non-bankruptcy law, including foreclosure proceedings in state court, and contacting the debtor and co-debtors by telephone or written correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

10.     Movant has retained counsel to pursue this motion and anticipates incurring attorneys' fees and costs for which it may seek reimbursement.

WHEREFORE, Movant respectfully requests that this court enter an order:

A.      granting Movant relief from the automatic stay and co-debtor stay so that Movant, its successors and assigns, may exercise its remedies against the Property as permitted by the Note and Mortgage and applicable non-bankruptcy law, including foreclosure proceedings in state court, and authorizing Movant to contact the debtor and co-debtors by telephone or written correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement;

B.      granting abandonment of the Bankruptcy Estate's interest in the Property;

C.      withdrawing proof of claim 4-1 and authorizing and directing the standing trustee

Drafted by:

O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax

5

to stop making payments on Movant's claim.

      D.      declaring that the relief granted herein shall survive the conversion of this case

from chapter 13 to any other chapter under the Bankruptcy Code;

      E.      granting such other and further relief as the court deems just and appropriate.

Dated at Wauwatosa, Wisconsin this _20_ day of _December_ , 20_17_ .

                        O'DESS AND ASSOCIATES, S.C.
                        Attorneys for Movant

                        _____

                        By:     D. Alexander Martin
                              State Bar ID No. 1046591

                              Case No. 17-28664-beh

Drafted by:

    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax

1

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

In re:                                              Chapter 13
FLOYD DUSTIN BOWIE, III                             Case No. 17-28664-BEH
*fdba Premier Milwaukee*
*fdba Bowie Properties, LLC*
*fdba Delux Entertainment*
*dba Housing Matters, LLC*,
        Debtor.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 20 day of December , 2017, he caused a

copy of this notice and motion for relief from automatic stay, co-debtor stay and abandonment to

be served by U.S. mail on debtor, Floyd Dustin Bowie, III, at 3855 N. 75th Street, Milwaukee,

Wisconsin 53216, Floyd E. Bowie and Mary J. Bowie, at 9533 West Debbie Lane, Milwaukee,

Wisconsin 53224, and the identified creditors in the attached matrix; and, on the same date by

electronic means *via* CM/ECF on debtor's counsel, James L. Miller; and, on the chapter 13

trustee, Rebecca R. Garcia, and the office of the U.S. Trustee.

Dated at Wauwatosa, Wisconsin this 20 day of December , 2017.

D. Alexander Martin

Drafted by:

O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax

2

<u>Creditor Mailing Matrix (Case No. 17-28664-beh)</u>

Drafted by:

      O'Dess and Associates, S.C.
      1414 Underwood Avenue, Suite 403
      Wauwatosa, WI 53213
      (414) 727-1591
      (414) 727-1590 fax

3

Label Matrix for local noticing
0757-2
Case 17-28664-beh
Eastern District of Wisconsin
Milwaukee
Fri Dec  8 15:22:46 CST 2017

BMO Harris Bank N.A.
P.O. Box 2035
Milwaukee, WI 53201-2035

Citibank, N.A.
PO Box 6030                    *
Sioux Falls, SD 571176030

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

United States Attorney's Office
517 E. Wisconsin Ave.
Room 530
Milwaukee, WI 53202-4509

Wells Fargo Bank, NA
c/o Gray & Associates, L.L.P.
16345 W Glendale Dr
New Berlin, WI 53151-2841

Wisconsin  Department  Of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

Wisconsin Dept. Of Revenue
Special Procedures Unit
P.O. Box 8902
Madison, WI 53708-8902

Aurora Health Care
PO Box 091700
Milwaukee, WI 53209-8700

Beck, Chaet, Bamberger & Polsky
330 E Kilbourn Ave #1085
Milwaukee, WI 53202-3146

Bmo Harris Bank
Po Box 1111
Madison, WI 53701-1111

Bmo Harris Trust & Savings
111 W Monroe
Chicago, IL 60603-4095

Citi Bank
Po Box 769006                    *
San Antonio, TX 78245-9006

Citibank, N.A.
P.O. Box 6030                    *
Sioux Falls, SD 57117-6030

Citibank/Home Depot
PO Box 790328
St. Louis, MO 63179-0328

City of Milwaukee Water
841 N Broadway Rm 406
Milwaukee, WI 53202-3613

Crump Law Firm
6114 W Capitol Dr Suite 200
Milwaukee, WI 53216-2147

GC Service Limited Partnership
P.O. Box 2667 (064)
Houston, TX 77252-2667

Gray & Associates, L.L.P.
16345 West Glendale Drive
New Berlin, WI 53151-2841

Horizons Law Group
611 N Barker Rd, Suite 209
Brookfield, WI 53045-5930

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Law Office of Martin J. Greenberg, LLC
3127 W Wisconsin Ave
Milwaukee, WI 53208-3957

Office of the U. S. Trustee        *
517 East Wisconsin Ave.
Room 430
Milwaukee, WI 53202-4510

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Peterson, Johnson, Murray
788 N Jefferson St. Suite 500
Milwaukee, WI 53202-3763

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Robert Settecase
Milwaukee, WI

Schober, Schober & Mitchell S.C.
PO Box 554
Waukesha, WI 53187-0554

Select Portfolio Servicing
Po Box 65250
Salt Lake City, UT 84165-0250

Synchrony Bank/mega Group Usa I
C/o Po Box 965036
Orlando, FL 32896-0001

Total Mechanical Inc
W234 N2830 Paul Road
Pewaukee, WI 53072-5731

WE Energies
2616 W. Clybourn St
Milwaukee, WI 53233-2520

Wells Fargo Bank, NA
Default Document Processing
N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700


Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill, SC 29715-7203

Wisconsin Department of Revenue
819 N 6th St RM 408
Milwaukee, WI 53203-1606

Wisconsin Electric Power
231 W Michigan St # A130
Milwaukee, WI 53203-2918


Floyd Dustin Bowie III
3855 N. 75th Street
Milwaukee, WI 53216-1909

James L. Miller
Miller & Miller Law, LLC          *
633 West Wisconsin Avenue
Suite 500
Milwaukee, WI 53203-1905

Rebecca R. Garcia
Chapter 13 Trustee          *
PO Box 3170
Oshkosh, WI 54903-3170

Notice and Motion will not be served by US Mail on the entities at the addresses
below or the entities marked with an asterisk above.

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
PO Box 69 Stop 811
Memphis, TN 38101

Portfolio Rc
120 Corporate Blvd Ste 1
Norfolk, VA 23502

(d)Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)CitiMortgage, Inc.

End of Label Matrix
Mailable recipients    38
Bypassed recipients     1
Total                  39

Supporting Materials

1.2 **If you own or have more than one, list here:**

| | |
|---|---|
| **1821 N Marshall Street** | **What is the property?** Check all that apply |
| Street address, if available, or other description | ☑ Single-family home |
| | ☐ Duplex or multi-unit building |
| | ☐ Condominium or cooperative |
| | ☐ Manufactured or mobile home |
| **Milwaukee**   **WI**   **53216-0000** | ☐ Land |
| City         State         ZIP Code | ☐ Investment property |
| | ☐ Timeshare |
| | ☐ Other |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $179,600.00 | $179,600.00 |

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

Rental Property

☐ Check if this is community property (see instructions)

**Milwaukee**
County

Other information you wish to add about this item, such as local property identification number:

Single Family operated as a single family home that debtor rents out.
Fair Market Value as listed on 2016 Property Tax Report

1.3 **If you own or have more than one, list here:**

| | |
|---|---|
| **2119-2121 W. Silver Spring** | **What is the property?** Check all that apply |
| Street address, if available, or other description | ☐ Single-family home |
| | ☑ Duplex or multi-unit building |
| | ☐ Condominium or cooperative |
| | ☐ Manufactured or mobile home |
| **Milwaukee**   **WI**   **53209-0000** | ☐ Land |
| City         State         ZIP Code | ☐ Investment property |
| | ☐ Timeshare |
| | ☐ Other |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $89,300.00 | $89,300.00 |

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

**Milwaukee**
County

Other information you wish to add about this item, such as local property identification number:

Duplex- Debtor's brothers are residing at the property.
Debtor is on title to this property, father manages the property recieves rent and takes care of all expenses related to this building.
No income is attributed to the debtor as a result of the ownership of this property.
Fair Market Value Based on 2016 Property Tax Bill

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................=>    $295,900.00

**Part 2:**  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

In re:                                          Chapter 13
FLOYD DUSTIN BOWIE, III                          Case No. 17-28664-BEH
*fdba Premier Milwaukee*
*fdba Bowie Properties, LLC*
*fdba Delux Entertainment*
*dba Housing Matters, LLC,*
        Debtor.

AFFIDAVIT SUPPORTING MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF KENTUCKY       )
                        ) ss.
COUNTY OF BOONE         )

        Before me, the undersigned authority, personally appeared the person identified
below, who being by me duly sworn, deposed as follows:

        1. My name is Toni Toll. I am employed by CitiMortgage, Inc. as a Vice
           President - Document Control. Pursuant to an agreement, CitiMortgage, Inc.
           provides loan servicing for Citibank, N.A. ("Movant"). I am of sound mind,
           lawful age and capable of making this Affidavit. The statements set forth in
           this Affidavit are true and correct based on my personal knowledge and
           review of the business records described herein. In my capacity as a Vice
           President – Document Control of CitiMortgage, Inc., I am authorized to make
           this Affidavit on behalf of Movant.

        2. This Affidavit is submitted in support of the motion seeking relief from the
           automatic stay (the "Motion") by Movant, in the above-captioned case.

        3. As a Vice President - Document Control, I am familiar with the books of
           account and have examined all books, records, and documents kept
           concerning the transaction alleged in the Motion. All of these books, records,
           and documents are kept in the regular course of business and are made at or
           near the time of the transaction using information transmitted by persons with
           personal knowledge of the facts. It is the regular practice to make and keep
           these books, records and documents. All of these books, records, and
           documents are managed by employees or agents whose duty it is to keep the
           books, records, and documents accurately and completely.

1

4. My responsibilities include, but are not limited to, handling bankruptcy account and ascertaining amounts due and payable.

5. I have personal knowledge of the facts contained in this Affidavit. Specifically, I have reviewed and have personal knowledge of the records related to the loan account associated with the certain property described as 2119 Silver Spring Drive W, Milwaukee, Wisconsin 53209.

6. Movant is the current holder of the Home Equity Line of Credit Mortgage. A true and correct copy of the Home Equity Line of Credit Mortgage is attached hereto as Exhibit 1 and incorporated herein by reference.

7. Movant is the current holder of the note. A true and correct copy of the note and certification of conversion is attached hereto as Exhibit 2, and incorporated herein by reference.

8. As of December 6, 2017, there are one or more defaults in paying Debtor(s) post-petition amounts due with respect to the note.

9. As of the date hereof, the principal balance owed by the Debtor(s) to Movant is $24,436.68, plus advances made, attorney fees, costs, other fees and charges, and interest accruing thereon in accordance with the loan documents.

10. The following chart sets forth those post-petition payments, due pursuant to the terms of the note, that have been missed by the Debtor(s) as of December 6, 2017:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| _1_ | _9/26/17_ | _9/26/17_ | _$501.51_ | _$0.00_ | _$501.51_ | _$501.51_ |
| _1_ | _10/26/17_ | _10/26/17_ | _$251.19_ | _$0.00_ | _$251.19_ | _$251.19_ |
| _1_ | _11/26/17_ | _11/26/17_ | _$246.83_ | _$0.00_ | _$246.83_ | _$246.83_ |
| Less postpetition partial payments (suspense balance): | | | | | | ($0.00) |

Total: $999.53

WI – Eastern District - Affidavit Supporting MFR – 20160607
v.WI20160607

11. As of December 6, 2017, the total postpetition arrearage/delinquency is $999.53, consisting of (i) the foregoing total of missed postpetition payments in the amount of $999.53, plus (ii) the following postpetition fees and advances for taxes and insurance:

| Description | Amount |
|---|---|
| None | $0.00 |

12. Attached hereto as Exhibit 3 and incorporated herein by reference is a summary of the post-petition mortgage payment history since the post-petition mortgage payments were last current.

13. As of the date hereof, the total debt owed by the Debtor(s) to Movant is $29,290.34.

14. Based on the Debtor's schedules, the estimated current market value of the property is $89,300.00.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.

EXECUTED on ___Dec 18___, 2017.

By: _____

Name:   Toni Toll

STATE OF __Ky__ )
                          ) ss.
COUNTY OF __Boone__ )

Subscribed and sworn to me the undersigned authority by _Toni Toll_ on this __18__ day of _December_, 20_17_.

My Commission Expires: _10/22/21_

_____
Notary Public in and for the
State of _Ky_
[SEAL]

KATHLEEN DAUGHERTY
Notary Public, ID No. 588148
State at Large, Kentucky
My Commission Expires October 22, 2021

WI – Eastern District - Affidavit Supporting MFR – 20160607
v.WI20160607

3

EXHIBIT 1



DOC.# 08930185

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED    01/07/2005   03:01PM

JOHN LA FAVE
REGISTER OF DEEDS

AMOUNT:27.00

RETURN TO



Southpointe Plaza II
Suite 300
380 Southpointe Blvd.
burg, PA 15317
(800) 920-0050

ACCOUNT NO.

## HOME EQUITY LINE OF CREDIT MORTGAGE

In this Mortgage, "You", "Your" and "Yours" means **FLOYD D. BOWIE, A SINGLE PERSON AND FLOYD E. BOWIE, A MARRIED MAN AND MARY J. BOWIE AS A NON- VESTED SPOUSE,** ("Mortgagor") and "We," "Us" and "Our" means **CITIBANK, FEDERAL SAVINGS BANK,** which has a home office of 11800 Spectrum Center Drive, Reston, VA  22090. The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Mortgage.

The "Property" means the real estate, including the leasehold (if any), located at **2119 SILVER SPRING DR W, MILWAUKEE, WI  53209, MILWAUKEE County.** Tax key number: .

### SEE ATTACHED LEGAL DESCRIPTION

THIS MORTGAGE between You and Us is made as of the date next to Your first signature below and has a final maturity date 30 years and 2 months from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest. The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Mortgage may not exceed **$29,000.00** (the "Credit Limit"). At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Mortgage. Obligations under the Agreement, Mortgage and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a mortgage release to be executed and such release is properly recorded.

TO SECURE to Us:  (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Mortgage (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited, You hereby mortgage, grant and convey to Us the Property.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Mortgage is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

CFX-H-SI-702-WI
BOWIE

1 of 8

Revised 03/17/2004

**citibank®**

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS MORTGAGE, AND AGREE TO BE BOUND
BY ALL TERMS AND CONDITIONS STATED ON PAGES 4 THROUGH 8 FOLLOWING.

IF MORTGAGOR IS AN INDIVIDUAL

| | | | |
|---|---|---|---|
| _____ 11/30/2004 | | _____ 11/30/2004 | |
| Mortgagor: **FLOYD D BOWIE** | | Mortgagor: **FLOYD E BOWIE** | |
| [ ] Married | [ ] Unmarried | [X] Married | [ ] Unmarried |
| | | | 11/30/04 |
| Mortgagor: | | Mortgagor: | |
| [ ] Married | [ ] Unmarried | [X] Married  *Mary J. Bowie* | [ ] Unmarried |
| | 11/30/2004 | | |
| **MARY J BOWIE** | | | |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

STATE OF WISCONSIN, COUNTY OF MILWAUKEE SS:

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY
that **FLOYD D BOWIE, FLOYD E BOWIE, AND MARY J BOWIE** personally known to me to be the same
person(s) whose name(s) is(are) subscribed to the foregoing instrument, appeared before me this day in person, and
acknowledged that (s)he(they) signed sealed and delivered the said instrument as his(her)(their) free and voluntary
act, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___30___ day of ___November 2004___

My Commission Expires: ___08/07/05___

*David Frederick* _____  Notary Public

**citibank®**

**IF MORTGAGOR IS A TRUST:** _____
not personally but solely as trustee as aforesaid

By: _____
Title

ATTEST: _____
Title

STATE OF WISCONSIN          )SS:
County of MILWAUKEE         )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that
_____, President and Secretary, _____
respectively, appeared before me this day in person, and acknowledged that they signed and delivered the said
instrument as their own free and voluntary acts and as the free and voluntary act of the said _____

corporation, as Trustee, for the uses and purposes therein set forth, and the said _____
Secretary did also then add their acknowledgement that (s)he, as custodian of the corporate seal of said corporation,
did affix the said corporate seal of said corporation to said instrument as his (her) own free and voluntary act, and as
the free and voluntary act of said corporation, as Trustee, for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ day of _____.

My Commission Expires: _____

_____
Notary Public

CFX-H-SI-702-W1
BOWIE

3 of 8

Revised 03/17/2004



You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property, and that the Property is unencumbered, except for the encumbrances of record and any first mortgage. You covenant that You warrant and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of this Mortgage.

You and We covenant and agree as follows:

1. **Payment of Indebtedness.** Borrower shall promptly pay when due the indebtedness secured by this Mortgage including, without limitation, that evidenced by the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Us under the Agreement will be applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the indebtedness secured by this Mortgage in such order as We may choose from time to time.

3. **Charges; Liens.** Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof, upon Our request You shall promptly furnish to Us receipts evidencing such payment.

You shall make payments, when due, on any indebtedness secured by a mortgage or other lien that is prior in right time to this Mortgage (a "Prior Mortgage"). You shall promptly discharge the lien of any Prior Mortgage not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to this Mortgage. You shall not enter into any agreement with the holder of a Prior Mortgage whereby such Prior Mortgage, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Mortgage without Our prior written consent.

4. **Hazard Insurance.** You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgagee clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Mortgage.



If the Property is acquired by Us under Paragraph 14 of this Mortgage, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Mortgage covers a unit in a condominium project or planned unit development.

**5. Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Mortgage is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 5 of this Mortgage if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Mortgage to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Mortgage being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against rent loss in addition to the other hazards for which insurance is required herein.

**6. Protection of Our Security.** If You fail to perform Your obligations under this Mortgage, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Mortgage (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

**7. Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 21 of 42



**8. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

**9. Forbearance Not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

**10. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

**11. Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Mortgage shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of this Mortgage or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

**12. Severability.** If any term of this Mortgage is found to be unenforceable, all other provisions will remain in full force.

**13. Due on Transfer Provision - Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Mortgage. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Mortgage without further notice or demand on You.

**14. Default.** If You breach any term in this Mortgage, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale under this Mortgage and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Mortgage, including attorney's fees and allocated costs of Our salaried employees.

**15. Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.



16. **Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Mortgage when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

17. **Release.** Upon payment of all sums secured by this Mortgage and any applicable Early Closure Release Fee or other fees and upon (a) expiration of the Agreement or (b) Your request, We shall release this Mortgage and You shall pay all costs of recordation along with any reconveyance fee and any statement of obligation fee, if any.

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Mortgage or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys fees and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.'

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Mortgage constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Mortgage and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Mortgage or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Mortgage, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 23 of 42



**23. Choice of Law.** This Mortgage will be governed by the laws of the United States and (where not inconsistent) the interest rate laws of the State of California, and the procedural, deficiency, one form of action and foreclosure laws of the state where the Property is located.

**24. Your Copy.** You shall be given one conformed copy of the Agreement and this Mortgage.

**25. Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Mortgage unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Mortgage and may invoke any remedies permitted by Paragraph 14.

**26. Waiver of Homestead.** You waive all right of homestead exemption in the Property.

**27. Trustee Exculpation.** If this Mortgage is executed by a trust, You execute this Mortgage as trustee as aforesaid, in the exercise of the power and authority conferred upon and vested in it as such trustee, and it is expressly understood and agreed by Us and by every person hereafter claiming any right hereunder that nothing contained herein or in the Agreement shall be construed as creating any liability on You personally to pay amounts owing in connection with the Agreement or this Mortgage or any interest that may occur thereon, or to perform any covenants either express or implied contained in this Mortgage, all such liability, if any, being expressly waived, and that any recovery on the Mortgage or the Agreement shall be solely against and out of the Property by enforcement of the provisions of this Mortgage and the Agreement, but this waiver shall in no way affect the personal liability of any individual Borrower, co-maker or guarantor of this Agreement.

This document was prepared by: **SHALINI KOCHUNNY**

*Citi Bank*
*Po Box 790017 MS 221*
*St. Louis MO*
*63179*

**Legal Description**

The following described real estate in Milwaukee County, State of Wisconsin:

Lot Eight (8), Block Six (6) in Long Island Subdivision No. 3, being a subdivision in the Northeast and Northwest 1/4 of Section 31, in Township 8 North, Range 22 East, and vacated Argyle Avenue and North 22nd Street, in the City of Milwaukee, County of Milwaukee and State of Wisconsin.

**Tax Id: 195-0299-7**

EXHIBIT 2



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Account No.:

Borrower(s):  **FLOYD D BOWIE**

Property Address: 2119 SILVER SPRING DR W, MILWAUKEE, WI 53209 (the "Property")

| Credit Limit: | $29,000.00 |
|---|---|
| Index: | 5.000% |
| Initial Margin (if applicable): | Not Applicable |
| Initial Daily Periodic Rate (if applicable): | Not Applicable |
| Initial ANNUAL PERCENTAGE RATE (if applicable):<br>(The Initial Annual Percentage Rate will vary as the Index varies) | Not Applicable |
| Date the Initial Margin Ends and Regular Margin Begins (if applicable): | Not Applicable |
| Regular Margin: | 2.250% |
| Regular Daily Periodic Rate: | 0.019863% |
| Regular ANNUAL PERCENTAGE RATE:<br>(The Regular Annual Percentage Rate will vary as the Index varies) | 7.250%<br>(Index +/- the Regular Margin) |

| Mortgage Broker Fee (Finance Charge)<br>Paid by Borrower: | $0.00 | Mortgage Broker Fee<br>Paid by Lender: | $500.00 |
|---|---|---|---|

Borrower Charges Paid Outside of Closing (Finance Charge)

| Broker - Processing Fee: | | Broker - Origination Fee: | |
|---|---|---|---|
| Broker - Courier / Freight / Postage: | | Broker - Appraisal Fee: | |
| Broker - Application Fee: | | Broker - Credit Report Fee: | |
| Broker - Administration Fee: | | Broker - Other: | |

Closing Costs, Paid by Citibank*

| Appraisal Fee: | $85.00 | Recording Fees: NASCO Milwaukee<br>County Register of Deeds | $27.00 |
|---|---|---|---|
| Credit Report Fee: | $2.00 | City/County Tax/Stamps: | $0.00 |
| Flood Certification Fee (Finance Charge): | $4.25 | State Tax/Stamps: | $0.00 |
| Settlement or Closing Fee (Finance Charge):<br>NASCO | $350.00 | Intangible Tax: | $0.00 |
| Abstract or Title Search Fee: NASCO | $50.00 | Document Stamp Tax: | $0.00 |
| Title Examination Fee: | $0.00 | Mortgage Registration Tax: | $0.00 |
| Title Insurance Binder: | $0.00 | Tax Certificate Fee: | $0.00 |
| Document Preparation: | $0.00 | Mortgage Taxes:     Borrower Portion | $0.00 |
| Overnight/Postage Fee (Finance Charge): | $0.00 | Lender's Portion | $0.00 |

**Total Closing Costs:**     $ 518.25

*These charges are paid outside of the closing by Lender. However, if your loan is terminated within the first 36 months, with the exception of the Lender's Portion of the Mortgage Taxes and the Document Preparation Fee, you will be required to repay us all of these closing costs incurred on your behalf.

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Home Equity Line of Credit Agreement and Disclosure, which consists of 9 pages, and acknowledge receipt of a completed copy, along with the notice about Your Billing Rights. The date of this Agreement is the latest date next to a Borrower's signature.

_____   11/30/2004
Borrower: **FLOYD D BOWIE**

Borrower: _____

_____
Borrower:

_____
Borrower: Pay to the order of

without recourse on us Citibank, N.A.
successor by merger to CFSB, N.A.
formerly known as Citibank, FSB

Harrison LDval, VP
Citibank, N.A.

Revised 06/30/2004



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

1. **DEFINITIONS:** As used herein:

   a) "Account" means the Home Equity Line of Credit Account opened under the Agreement.

   b) "Agreement" means this Home Equity Line of Credit Agreement and Disclosure together with any modifications, amendments, replacements or substitutions thereto.

   c) "Business Day" means any day other than a Saturday, Sunday or a federal holiday.

   d) "Citibank" means Citibank, F.S.B. also known as Citibank, Federal Savings Bank.

   e) "Credit Limit" means the maximum aggregate amount of the Loan Advances that may be outstanding at any given time pursuant to the Agreement.

   f) "Draw Period" means the ten years from the date of the Agreement during which Loan Advances may be made.

   g) "Index" means the highest Prime Rate as published in the Money Rates section of *The Wall Street Journal* from time to time. *The Wall Street Journal* is available at many newsstands and public libraries, or you may obtain copies from The Wall Street Journal, 200 Burnett Road, Chicopee, Massachusetts 01020. A Prime Rate is not necessarily the lowest or best rate available.

   h) "Initial Pricing" means that your Agreement has an Initial Margin, Initial Daily Periodic Rate, and an Initial Annual Percentage Rate.

   i) "Loan Advances" means amounts drawn on your Account pursuant to the Agreement by Home Equity Line of Credit checks, or in any other way Citibank allows, and advances by Citibank pursuant to the Agreement or Mortgage to protect the Property or Citibank's security interest in the Property, including but not limited to advances to maintain required insurance on the Property or to pay taxes on the Property.

   j) "Mortgage" means the mortgage, deed of trust, deed to secure debt or cooperative security agreement which covers the Property which secures the Agreement.

   k) "Property" means the property described in the Mortgage which secures the Agreement.

   l) "Repayment Period" means the twenty years immediately following the Draw Period during which Loan Advances may not be made.

   m) "You," "Your" and "Yours," whether or not the first letter of the word is capitalized, means each person who signs below as Borrower, jointly and severally.

   Certain other terms are defined elsewhere in this Agreement.

2. **PROMISE TO PAY:** You promise to pay to Citibank the total of all Closing Costs (if indicated above that Closing Costs are paid by Borrower), all Loan Advances, together with Finance Charges at the applicable daily periodic rate, and any other fees, *charges or other Finance Charges*, all as provided for in the Agreement.

3. **HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED:**

   a) Finance Charges on Loan Advances at the applicable Daily Periodic Rate begin to accrue on the date the Loan Advance is posted to your Account. There is no grace period for repayment of your balance during which Finance Charges will not accrue. If there are any other Finance Charges payable under the Agreement, they will be dollar amounts itemized herein as Finance Charges and will be due and payable on the date of the Agreement.

   b) The appropriate margin is added to the Index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 28 of 42



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

   c) The Index(es) used for a billing cycle will be the daily Index rate published each Business Day.

   d) If your Account has Initial Pricing:
     (i) The Initial Margin shown above will be in effect from the date of the Agreement until the Date the Initial Margin Ends and Regular Margin Begins shown above.
     (ii) The Initial Annual Percentage Rate and the Initial Daily Periodic Rate, shown above, will be in effect from the date of the Agreement and can change each Business Day.
     (iii) On the Date the Initial Margin Ends and Regular Margin Begins shown above, the Regular Margin shown above will go into effect. If the Index has not changed so as to affect the rate, the Regular Annual Percentage Rate and Regular Daily Periodic Rate shown above will then be in effect and can change each Business Day.

   e) If your Account does not have Initial Pricing:
     (i) The Regular Margin shown above will be in effect from the date of the Agreement.
     (ii) The Regular Annual Percentage Rate and the Regular Daily Periodic Rate will be in effect from the date of the Agreement and can change each Business Day.

   f) The Annual Percentage Rate does not include costs other than interest. Any increase in the Annual Percentage Rate will result in an increase in the minimum monthly payment. The Annual Percentage Rate will not exceed 18%, no matter how much the Index increases.

   g) You will be sent statements on a monthly cycle which will reflect your Account activity and any amounts you owe Citibank. The amount of the Finance Charge in your statements will be calculated by multiplying the daily periodic rate for the day by the daily balance for your Account at the end of each day in the monthly billing cycle. The resulting Finance Charges for each day are totaled at the end of the statement period and disclosed on the statement as "Finance Charges - Interest". To determine the daily balance Citibank takes the beginning balance of your Account each day, adds any new Loan Advances and other charges, and subtracts any payments and credits. Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily balance for purposes of calculating the Finance Charge.

   h) Payments are applied first to due and unpaid Finance Charges and other charges and then to the unpaid balance of Loan Advances.

4. **FINANCE CHARGES NOT DUE TO DAILY PERIODIC RATE; CLOSING COSTS:**

   a) If you retained a mortgage broker, the amount of the mortgage broker fee, if any, is a Finance Charge. The amount of the mortgage broker fee is determined by your agreement with your mortgage broker and is not required by Citibank or paid by Citibank.

   b) If you agreed to pay the Closing Costs for your Account, your Closing Costs include Finance Charges in the amounts shown on page one of this Agreement for the cost of flood and tax certifications, overnight courier fees, and the cost charged by Citibank's attorneys or closing agents to conduct the closing for your Account.

5. **OTHER CHARGES:** These are charges other than Finance Charges. These charges are not counted as part of your daily unpaid balance of Loan Advances for purposes of computing Finance Charges:

   a) There is a $50 Annual Fee associated with your Account. This fee will automatically be charged to your Account in the same manner as a Loan Advance beginning on the first anniversary of your Account opening and annually thereafter.

   b) Late Fee. If Citibank does not receive the full amount of any monthly payment due within 15 calendar days of the due date, you will be charged a Late Fee of the greater of 6% of the overdue payment or $5. However, you will not be charged a Late Fee on an unpaid Late Fee.

CFB-H-NO-000-FS
BOWIE
     3 of 9
     Revised 06/30/2004

Case 17-28664-beh   Doc 24   Filed 12/20/17   Page 29 of 42



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

  c) Overlimit Fee. If there is a Loan Advance which causes your Credit Limit to be exceeded, Citibank will charge you a $10 overlimit fee. This charge will not be imposed on more than four transactions a day.

  d) Stop Payment. If you request Citibank to stop payment on one of your Home Equity Line of Credit Checks, Citibank will charge you an $8 stop payment charge per request.

  e) Returned Item Fee. If your payment is returned unpaid for any reason, Citibank will charge you a $25 returned item fee.

  f) Early Closure Release Fee. If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement. The amount of this fee will be automatically charged to your Account in the same manner as a Loan Advance.

  g) Document Research Fee. If, for any purpose other than a billing error inquiry or a tax audit inquiry, you request Citibank to provide copies of Account documents, Citibank may charge you $2 per copy and a $20 per hour document research fee.

  h) Other Fees Disclosed in Agreement. Any charges imposed by Citibank, if any, in connection with your Account are disclosed above at the beginning of the Agreement.

  i) Other Fees Disclosed in Mortgage. You agree to pay any other fees or charges provided for in the Mortgage or otherwise provided for in the Agreement.

  j) Fee to Release Prior Lien. You may have to pay a fee to release a prior lien or security interest in the Property.

  k) You agree to pay any reasonable costs incurred by Citibank in connection with the enforcement of its rights and remedies under the Agreement and the Mortgage, including, but not limited to, any reasonable attorneys' fees and other collection costs.

6. **SECURITY INTEREST IN PROPERTY:** As security for the Agreement, you are giving Citibank a security interest in the Property located at the address shown above, which security interest secures all of your obligations under this Agreement and the Mortgage. This Property is more fully described in the Mortgage you will sign along with this Agreement. Collateral which secures other obligations to Citibank may also secure the Agreement.

7. **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or $1/240^{th}$ of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an early closure release fee as provided for in the OTHER CHARGES section. Loan Advances may not be drawn to make payments on the Account. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.

8. **TRANSACTION REQUIREMENTS:** You may draw Loan Advances during the Draw Period up to your Credit Limit if your Account has not been closed or suspended or your Credit Limit reduced to where further Loan Advances would not be permitted.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

9. **TERMINATION OF ACCOUNT BY CITIBANK:** Citibank may close your Account, and require payment of the outstanding balance in full in a single payment, if:

   a) You fail to meet the repayment terms of the Agreement for any outstanding balance.

   b) There has been fraud or a material misrepresentation by you in connection with the Account.

   c) You take any action or fail to take any action which adversely affects the Property or Citibank's security interest in the Property, including but not limited to: a transfer of title to the Property or sale of the Property without Citibank's written permission; a failure to maintain any required insurance on the Property; failure to pay taxes on the Property; you permit the filing of a lien senior to that held by Citibank; the sole Borrower obligated on the Account dies; the Property is taken through eminent domain; a prior lien-holder forecloses; you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property; there is illegal use of the Property which could subject the Property to seizure; one of two Co-Borrowers dies and Citibank's security is thereby adversely affected; or you move out of the Property and Citibank's security is thereby adversely affected.

   d) You are or become an "executive officer" of Citibank as defined in Federal Reserve Board Regulation O and Citibank determines to require payment in full to comply with federal regulation.

In addition to the foregoing, Citibank shall have the right to exercise any and all of it rights and remedies allowed by law or as set forth in this Agreement or in the Mortgage, including, but not limited to, the right to bring an action against you and the right to bring a foreclosure action against the Property.

10. **SUSPENSION OF ACCOUNT OR REDUCTION OF CREDIT LIMIT BY CITIBANK:** Citibank may prohibit additional extensions of credit or reduce your Credit Limit during any period in which:

   a) You or any of you request a suspension of the Account or reduction of the Credit Limit.

   b) The maximum Annual Percentage Rate is reached.

   c) The value of the Property declines significantly below the Property's appraised value for purposes of the Account. As an example, if the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property.

   d) Bank reasonably believes that you will be unable to fulfill the repayment obligations under the Agreement because of a material change in your financial circumstances.

   e) You are in default of any material obligation under the Agreement or Mortgage.

   f) Bank is precluded by government action from imposing the Annual Percentage Rate provided for in the Agreement.

   g) The priority of Citibank's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Limit.

   h) Bank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

If any of the above circumstances change during the Draw Period and you want to reopen your Account or increase your Credit Limit to the original Credit Limit, you must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the above circumstances continue to exist. If Citibank suspended your Account or reduced your Credit Limit as a result of your request, the request for reinstatement must be signed by all of you.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 31 of 42



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

You agree that you will not attempt to obtain any additional credit extensions once you know that your credit privileges have been terminated or suspended. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under the Agreement.

11. **OTHER CHANGES TO THE ACCOUNT:** Citibank may change the Index and Regular Margin used under the Agreement if the original Index is no longer available, the new index has an historical movement substantially similar to that of the original Index, and the new index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable. Citibank may make a specified change to the Account if you specifically agree to the change in writing at that time. Citibank may make changes to the Account that will unequivocally benefit you throughout the remainder of the Account. Citibank may make insignificant changes in the terms of the Account, including but not limited to: changing the address to which payments are sent; minor changes to features such as the billing cycle date, the payment due date and the day of the month on which Index values are measured; changes in rounding practices within the tolerance rules allowed by applicable regulation; and changes to balance computation methods if the change produces an insignificant difference in the Finance Charge you pay.

12. **PROMOTIONAL RATE OFFERS:** At Citibank's discretion, Citibank may offer you a promotional rate (a promotional daily periodic rate and/or promotional margin). The period of time for which the promotional rate applies may be limited. Citibank will allocate your payments and credits to pay off balances at low promotional rates before paying off balances at higher periodic rates. Any promotional rate, the corresponding periodic rate, and the period of time during which it is in effect will be disclosed to you. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

13. **TAX IMPLICATIONS:** You should consult a tax advisor regarding the deductibility of interest (Finance Charges) and other charges under the Agreement.

14. **DELAY IN ENFORCEMENT:** Citibank may delay the exercise of Citibank's rights under the Agreement or Mortgage without losing them.

15. **PROPERTY INSURANCE:** You agree to maintain insurance on the Property as provided for in the Mortgage. If Borrower fails to maintain property insurance, Citibank may obtain insurance coverage, at Citibank's option and Borrower's expense. Citibank is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Citibank, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Citibank under this Section shall be considered Loan Advances and become additional debt of Borrower secured by the Mortgage.

16. **CREDIT INFORMATION:** You understand and agree that Citibank may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted. Upon request, Citibank will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report. You also agree that Citibank may obtain and use credit reports and other information that Citibank has obtained in a lawful manner consistent with Citibank's privacy policies about you for subsequent solicitations or for any other lawful purpose.

17. **FURTHER ASSURANCES:** You agree that, upon Citibank's request, you will promptly execute, acknowledge, initial and deliver to Citibank any documentation Citibank deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

18. **RESOLUTION OF DISPUTES BY ARBITRATION:** THIS SECTION CONTAINS IMPORTANT INFORMATION ABOUT YOUR ACCOUNT. IT PROVIDES THAT EITHER YOU OR CITIBANK CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, THE DISPUTE IS SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR, INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. THE DECISION OF THE ARBITRATOR IS FINAL AND BINDING.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 32 of 42



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

a) Agreement to Arbitrate Disputes. You agree that by entering into your Account with Citibank, either you or Citibank may elect to require that any dispute between you and Citibank be resolved by binding arbitration.

b) Disputes Covered by Arbitration. Disputes covered by arbitration include any claim relating to or arising out of your Account and any services relating to that relationship. Disputes include not only claims made directly by you, but also made by anyone connected with you or claiming through you, such as joint account holder, account beneficiary, or a representative or agent. Disputes include not only claims that relate directly to Citibank, but also its parent, affiliates, successors, assignees, employees, and agents, and claims for which Citibank may be directly or indirectly liable, even if Citibank is not properly named at the time the claim is made. Disputes include claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground, and include claims asserted as counterclaims, cross-claims, third-party claims, interpleaders or otherwise. Disputes include claims made as part of a class action or other representative action, it being expressly understood and agreed to that the arbitration of such claims must proceed on an individual (non-class, non-representative) basis. Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions.

c) Disputing an Arbitration. Disputes filed by you or by Citibank individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual claim for relief. In addition, disputes to effect foreclosure to transfer title to the property being foreclosed are not subject to arbitration.

d) Commencing an Arbitration. The arbitration must be filed with one of the following neutral arbitration forums: American Arbitration Association; National Arbitration Forum; or JAMS. If you initiate the arbitration, you must notify us in writing at Citibank, 1000 Technology Drive, O'Fallon, MO 63304, Attn.: Mail Stop 140, Legal Department. If Citibank initiates the arbitration, Citibank will notify you in writing at your last known address on file. You may obtain a copy of the arbitration rules for these forums, as well as additional information about initiating an arbitration, by contacting these arbitration forums at the following addresses:

American Arbitration Association: 355 Madison Avenue – 10th Floor
New York, NY 10017-4605
www.adr.org

National Arbitration Forum: P.O. Box 50191
Minneapolis, MN 55405
www.arbitration-forum.com

JAMS: 1920 Main Street
Suite 300
Irvine, CA 92610
www.jamsadr.com

e) The arbitration shall be conducted in the same city as the U.S. District Court closest to your home address, unless the parties agree to a different location.

f) Administration of Arbitration. The arbitration shall be decided by a single arbitrator, unless either party to the arbitration requests a panel of three arbitrators in which case the arbitration shall be conducted by a panel of three arbitrators (said arbitrator or arbitrators hereinafter referred to as "the arbitrator"). The arbitrator shall decide the dispute in accordance with applicable substantive law consistent with the Federal Arbitration Act. The arbitrator shall be empowered to award any damages or other relief provided for under applicable law and will not have the power to award relief to, or against, any person who is not a party to the arbitration. The decision rendered by the arbitrator shall be in writing; however, the arbitrator need not provide a statement of his reasons unless one is requested by you or Citibank. The award of the arbitrator shall be final and binding, subject to judicial intervention or review only to the extent allowed under the Federal Arbitration Act. The award of the arbitrator can be entered as a judgment in any court having jurisdiction.

g) Costs. The party initiating the arbitration shall pay the initial filing fee. If you file the arbitration and an award is rendered in your favor, Citibank will reimburse you for your filing fee. If there is a hearing, Citibank will pay the fees and costs for the

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 33 of 42



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

first day of that hearing. If either you or Citibank request a panel of three arbitrators, the party making the request shall pay the fees of those additional arbitrators unless the arbitrator rules otherwise. All other fees and costs will be allocated in accordance with the rules of the arbitration forum. However, Citibank will advance or reimburse filing and other fees if the arbitrator rules that you cannot afford to pay them or finds other good cause for requiring Citibank to do so. Each party shall bear the expense of their respective attorneys, experts, and witnesses and other expenses, regardless of who prevails, except to the extent the arbitrator assesses costs of the arbitration to either you or Citibank.

h)  No Class Action or Joinder of Parties.  You and Citibank agree that no class action, private attorney general or other representative claims may be pursued in arbitration, nor may such action be pursued in court if either you or Citibank elect arbitration. Unless mutually agreed to by you and Citibank, claims of two or more persons may not be joined, consolidated, or otherwise brought together in the same arbitration (unless those persons are joint account holders or beneficiaries on your Account, or parties to a single transaction or related transaction); this is so whether or not the claim may have been assigned.

i)  Right to Resort to Provisional Remedies Preserved.  Nothing herein shall be deemed to limit or constrain Citibank's right to resort to self-help remedies, such as the right of set-off or the right to restrain funds in an account, to interplead funds in the event of a dispute, to exercise any security interest or lien we may hold in property, or to comply with legal process, or to obtain provisional remedies such as injunctive relief, attachment, or garnishment by a court having appropriate jurisdiction.

j)  Governing Law.  You and Citibank agree that our relationship includes transactions involving interstate commerce and that these arbitration provisions are governed by, and enforceable under, the Federal Arbitration Act. To the extent state law is applicable, the laws of the state governing this Agreement apply.

k)  Severability, Survival.  These arbitration provisions shall survive (i) termination or changes to your Account, or any related services we provide; (ii) the bankruptcy of any party; and (iii) the transfer or assignment of your Account, or any related services we provide. If one or more of these arbitration provisions are deemed invalid or unenforceable, the remaining portions shall nevertheless remain valid and enforceable.

19.  **GOVERNING LAW:**  The Agreement will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the Commonwealth of Virginia; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located.

20.  **DUE ON SALE:**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Property is sold or transferred) without Citibank's prior written consent, Citibank may, at its option, require immediate payment in full of the outstanding balance due and owing with respect to your Account; however, Citibank shall not exercise this option if the exercise is prohibited by applicable law.

21.  **CHANGE IN NAME, ADDRESS OR EMPLOYMENT:**  You agree to notify us in writing of any change in name, address or employment.

22.  **NO WAIVER:**  Neither you nor Citibank shall be deemed to have waived any of rights, powers or remedies hereunder unless such waiver is embodied in a writing executed by either you or Citibank. The waiver by either you or Citibank of any breach or default by the other party to the Agreement in the performance of any obligation hereunder shall not constitute a waiver of any subsequent breach or default.

23.  **NOTICES:**  All notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a business day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a business day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to the customer service address shown on your monthly statement.

24.  **INVALIDITY CLAUSE:**  If any provision of the Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of you and Citibank. In either case, the remainder of the Agreement shall continue in full force and effect.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## YOUR BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and Citibank's responsibilities under the Fair Credit Billing Act.

**Notify Citibank in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to Citibank on a separate sheet at the address listed on your bill. Write to Citibank as soon as possible. Citibank must hear from you no later than 60 days after Citibank sent you the first bill on which the error or problem appeared. You can telephone Citibank, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Citibank to pay your Home Equity Line of Credit bill automatically from your checking or other authorized account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Citibank three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER BANK RECEIVES YOUR WRITTEN NOTICE

Bank must acknowledge your letter within 30 days, unless Citibank has corrected the error by then. Within 90 days, Citibank must either correct the error or explain why Citibank believes the bill was correct.

After Citibank receives your letter, Citibank cannot try to collect any amount you question, or report you as delinquent. Citibank can continue to bill you for the amount you question, including Finance Charges, and Citibank can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Citibank is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Citibank finds that Citibank made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Citibank did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Citibank will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Citibank thinks you owe, Citibank may report you as delinquent. However, if Citibank's explanation does not satisfy you and you write to Citibank within ten days telling Citibank that you still refuse to pay, Citibank must tell anyone Citibank reports you to that you have a question about your bill. And, Citibank must tell you the name of anyone Citibank reported you to. Citibank must tell anyone Citibank reports you to that the matter has been settled between you and Citibank when it finally is.

If Citibank does not follow these rules, Citibank cannot collect the first $50 of the questioned amount, even if your bill was correct.

Case 17-28664-beh    Doc 24    Filed 12/20/17    Page 35 of 42



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing
Mail Stop 7-13
250 E Street, SW
Washington, DC 20219

October 11, 2006

Mr. James E. Scott
Assistant General Counsel
Citigroup, Inc.
425 Park Avenue
New York, New York 10022

Re: Applications by Citibank, N.A., Citibank (South Dakota), N.A., and certain affiliates to internally reorganize and consolidate certain banking and credit card operations.
Application Control Numbers:

Dear Mr. Scott:

This letter is the official acknowledgement, authorization and certification by the Office of the Comptroller of the Currency (OCC) for the applications pertaining to an internal reorganization of various Citigroup, Inc. subsidiaries and affiliates. The transactions will combine a significant portion of Citigroup, Inc.'s domestic commercial and retail banking operations into Citibank, National Association, New York, New York, and its credit card operations into Citibank (South Dakota), N.A., Sioux Falls, South Dakota.

The OCC certifies and/or authorizes the following application:

Concerning the conversion of Citibank, Federal Savings Bank, Reston, Virginia to a national banking association under the title of CFSB, National Association: The OCC has reviewed and found no exception to the documents submitted by Citibank, Federal Savings Bank to complete the conversion process. As such, Citibank, Federal Savings Bank is authorized to commence business as a national bank as of October 1, 2006. This is also the official authorization given to CFSB, National Association to operate the former federal thrift branches as national bank branches. A listing of each newly authorized branches and its assigned OCC branch number is attached. Application Control Number:

Concerning the conversion of Citibank (West), FSB, San Francisco, California to a national banking association under the title of West, National Association. The OCC has reviewed and found no exception to the documents submitted by Citibank (West), FSB to complete the conversion process. As such, Citibank (West), FSB is authorized to commence business as a national bank as of October 1, 2006. This is also the official authorization given to West, National Association to operate the former federal thrift branches as national bank branches. A listing of each newly authorized branches and its assigned OCC branch number is attached. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 CFSB, National Association, Reston, Virginia; West, National Association, San Francisco, California; Citibank Texas, National Association, Dallas, Texas and Citibank (Delaware), New Castle, Delaware merged with and into Citibank, National Association, New York, New York, under the title of Citibank, National Association, with the resulting location of 3900 Paradise Road, Suite 127, Las Vegas, Nevada, under charter number 1461. Citibank, National Association, Las Vegas, Nevada is officially authorized to operate the branches of the target institutions and the main offices of the target institutions as branches. Branches of a national bank targets are automatically carried over to the resulting bank and retain their current OCC branch numbers. Application Control Number:

It is the OCC's understanding that Citibank (Banamex USA), Century City, California will not merge into Citibank, National Association, Las Vegas, Nevada until 2007. Citibank, National Association, Las Vegas, Nevada must provide the Large Bank Licensing Lead Expert with prior written notice of the date of the consummation of this merger in order for it to be officially certified by the OCC. You are reminded that the approval for this merger expires twelve months from August 3, 2006, the date of the OCC's approval of the merger. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 Citicorp Trust, National Association, Los Angeles, California, merged with and into Citibank, National Association, Las Vegas, Nevada, under the title of Citibank, National Association and charter number 1461. Application Control Number

This letter serves as the official OCC certification that effective October 1, 2006 Citibank USA, National Association, Sioux Falls, South Dakota and Citibank (Nevada), National Association, Las Vegas, Nevada merged with and into Citibank (South Dakota), N.A. Sioux Falls, South Dakota under the title of Citibank, (South Dakota), National Association, charter number 16971. Application Control Number:

This letter serves as the official OCC certification that effective October 1, 2006 Citibank (South Dakota), National Association, (charter number 16971) Sioux Falls, South Dakota, acquired substantially all of the assets and liabilities of Universal Financial Corp, Salt Lake City, Utah. Application Control Number

This letter serves as the official OCC certification, effective October 1, 2006, of a $14.7 billion decrease in Citibank, National Association, Las Vegas, Nevada's surplus capital account as a result of a dividend-in-kind to its sole shareholder, Citicorp Holdings, in the form of the transfer of the stock of Citibank (South Dakota), N.A., a subsidiary of Citibank, National Association. Application Control Number:

Effective October 1, 2006 the following transactions approved by the OCC on August 3, 2006 were also consummated:

Citibank, National Association, Las Vegas, Nevada effected its change in bank control to acquirer Citigroup Trust – Delaware, National Association, 824 Market Street, Wilmington, Delaware as an operating subsidiary. Application Control Numbers:                          and

Citibank (South Dakota), N.A., Sioux Falls, South Dakota effected its change in bank control to acquire Department Stores National Bank, 701 East 60th Street, Sioux Falls, South Dakota thru a material non-cash contribution of stock from Citibank, National Association, Las Vegas, Nevada and to operate Department Stores National Bank as an operating subsidiary. Application Control Numbers:

Citibank (South Dakota), N.A. received from Citibank, National Association a material non-cash contribution to surplus of $824 million in the form of the stock of Department Stores National Bank, Citicorp Credit Services, Inc. (USA) and Citicorp Payment Services, Inc. Application Control Number

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at: stephen.lybarger@occ.treas.gov . Please reference the application control number or numbers in any correspondence.

Sincerely,

Stephen A. Lybarger
Director for Licensing Activities

WHEN RECORDED RETURN TO:
Citicorp Mortgage, Inc.
Mail Station 302
P.O. Box 790002
St. Louis, MO 63179

## POWER OF ATTORNEY

CITIBANK, N.A., f/k/a First National City Bank, a national banking association duly constituted and in existence in accordance with the laws of the United States of America with offices located in New York, New York, hereby constitutes and appoints CITICORP MORTGAGE, INC ("CMI"), a Delaware corporation with offices located in St. Louis, Missouri, its true and lawful Attorney-In-Fact by and through any officers appointed by the Board of Directors of CMI to execute and acknowledge in writing or by facsimile stamp or otherwise all documents customarily and reasonably necessary and appropriate for the tasks described below. This Power of Attorney is being issued as a supplement to any existing powers of attorney in connection with the transfer by the undersigned to CMI of certain rights and responsibilities to service certain loans (the "Loans"). These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt, Co-ops and other forms of Security Instruments (collectively the "Security Instruments") and the Notes secured thereby, whether held in the undersigned's portfolio or sold to private, public or agency investors (the "Investors"). If owned by Investors, the Loans may be in the undersigned's name solely for the purpose of allowing the undersigned to perform its servicing obligations on behalf of such Investors.

(i)     the right to collect, forbear, accelerate, initiate suit on and/or foreclose all Loans.

(ii)    The right to manage, sell, transfer, convey or otherwise dispose of the real and/or personal property described in the Security instruments pursuant to foreclosure or other similar proceedings, or upon acquisition of such property.

The undersigned gives to said Attorney-in-Fact full power and authority to do and perform all and every act and thing and whatsoever is necessary and proper to be done by authority hereof as fully, for all intents and purposes, as it, the undersigned, might or could do and hereby ratifying and confirming all that said Attorney-In-Fact shall lawfully do or cause to be done by authority hereof. Third parties without actual notice may rely upon the exercise of such power, all conditions precedent to such exercise of power have been satisfied and this Power of Attorney has not been revoked unless an Instrument of Revocation has been recorded.

IN WITNESS WHEREOF, CITIBANK, N.A. has caused these presents to be signed by its Vice President and be impressed with its corporate seal, on this 8th day of February, 1995, at the corporation's office in New York, New York, United States of America.

Attest:                                          CITIBANK, N.A.

Gregory J. Koczanski                             George Seegers
Assistant Secretary                              Vice President
399 Park Avenue; New York, NY 10043              399 Park Avenue; New York, NY 10043

                                                        SEAL

State of New York      )
                       ) ss:
County of New York     )

On this 8th day of February, 1995 before me personally came George Seegers to me known, who, being by me duly sworn, did depose and say that he is a Vice President of Citibank, N.A. , the association described in and which executed the above instrument and Gregory J. Koczanski to me known, who, being by me duly sworn, did depose and say that he is an Assistant Secretary of Citibank, N.A., the association described in and which executed the above instrument; and that they signed their names thereto by authority of the Board of Directors of said association.

                    KENNETH S. COHEN
                Notary Public, State of New York
                       No. 31-4924806
                   Qualified in New York County
                Commission Expires Feb. 28, 1996    Notary Public

## State of Delaware
## Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE SAID "CITICORP MORTGAGE, INC.", FILED A CERTIFICATE OF AMENDMENT, CHANGING ITS NAME TO "CITIMORTGAGE, INC.", THE THIRD DAY OF APRIL, A.D. 2000, AT 10 O'CLOCK A.M.

RECEIVED & ENTERED
N. BRISTOL COUNTY
DISTRICT DEEDS
AUG 16 3 47 PM '01

RECEIVED FOR RECORD AND ENTERED
WITH BRISTOL COUNTY NORTHERN
DISTRICT REGISTRY OF DEEDS LAND
COURT RECORDS        TAUNTON, MA

DATE 08-16-2001 TIME 3:47PM
LAND COURT DOC. # 67387
NOTED ON CERT. #
BOOK _____ PAGE _____

REGISTER OF DEEDS

Bristol North
Land +
Registry

*Edward J. Freel, Secretary of State*

AUTHENTICATION:

DATE:        04-13-00

# EXHIBIT 3

: FLOYD DUSTIN BOWIE, III
Case No. 17-28664-BEH
Property Address: 2119 Silver Spring Drive W, Milwaukee, Wisconsin 53209

Based on the regularly-maintained records of the mortgage servicer, the following is a summary of the debtor's payment history since post-petition mortgage payments were last current:

| | Date Payment Due | Amount Due | Date Payment Received | Amount Received | Post-Petition Month Applied As | Suspense Balance |
|---|---|---|---|---|---|---|
| 1 | 9/26/2017 | $501.51 | N/A | N/A | N/A | N/A |
| 2 | 10/26/2017 | $251.19 | N/A | N/A | N/A | N/A |
| 3 | 11/26/2017 | $246.83 | N/A | N/A | N/A | N/A |

The undersigned is an employee of the CitiMortgage, Inc., which provides loan servicing for Citibank, N.A., Movant and holder of the mortgage loan which is the subject of this motion and states that the foregoing information is true and accurate to the best of my knowledge.

EXECUTED on ___Dec 18___, 2017.

By: ___Toni Toll___
Name: Toni Toll

STATE OF __Ky__ )
                              )ss:
COUNTY OF __Boone__ )

Subscribed and sworn to me the undersigned authority by ___Toni Toll___
on this __18__ day of __December__, 20_17_.

My Commission Expires: __10/22/21__

_____
Notary Public in and for the
State of __Ky__

KATHLEEN DAUGHERTY
Notary Public, ID No. 589148
State at Large, Kentucky
My Commission Expires October 22, 2021

4